IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES P. LANCE, | ) | Case No. 5:17-cv-855 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |
| | ) | |

## I.     Introduction

Plaintiff, James Patrick Lance ("Lance"), seeks judicial review, pursuant to 42 U.S.C. §405(g), 42 U.S.C. §1383(c)(3), of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  The parties have consented to my jurisdiction.  ECF Doc. 18.

The Commissioner's handling of the certain medical opinion evidence of record and the Step Three analysis regarding Listing 1.02(A) were supported by substantial evidence and require no remand.  However, because the Commissioner's RFC determination is not supported by substantial evidence due to the failure to properly consider certain treating source opinion evidence, the final decision of the Commissioner must be VACATED and the case must be REMANDED.

## II.      Procedural History

Lance applied for DIB on November 15, 2012 (Tr.15) alleging a disability onset date of July 30, 2010.  (*Id.*)  Lance alleged disability due to conditions of diabetes, a labral tear in the right hip, plantar fibromatosis, and associated chronic pain in his feet and right hip.  (Tr. 19, 252)  Lance's application was denied initially on May 23, 2013, and on reconsideration on November 20, 2013.  (Tr. 15)  Thereafter, Lance filed a written request for rehearing on December 26, 2013.  (*Id.*)  Administrative Law Judge Christine Hilleren ("ALJ") heard the case on May 6, 2015.  (Tr. 15)  The ALJ denied Lance's claim on August 12, 2015.  (Tr. 12)  The Appeals Council denied further review on February 21, 2017, rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 5)

## III.      Evidence

Lance now raises two arguments: (1) the ALJ erred in weighing the opinion of treating physician, Susan Dominic, M.D.; and (2) the ALJ erred when she found that Lance's diabetes, labral tear in his right hip, plantar fibromatosis, and associated chronic pain in his feet and right hip did not meet the criteria of Listing 1.02, which concerns major dysfunction of certain joints. *See* ECF Doc. 13, Page ID# 700, 704, and 711.  Because the issues are limited, it is not necessary to summarize the entire record.

### A.      Personal, Educational, and Vocational Evidence

Lance was 37 years old on his alleged onset date, and had turned 42 by the time of the hearing.  (Tr. 23, 39)  *Id.*  Lance has worked as a bin filler, a transportation manager, in finances for a job placement service, and as a traffic manager.  (Tr. 41-46).

**B. Medical Records Related to Lance's Conditions of Diabetes, a Labral Tear in the Right Hip, Plantar Fibromatosis, and Associated Chronic Pain in His Feet and Right Hip**

Lance's medical records indicate he had a history of diabetes with peripheral neuropathy. (Tr. 375) He uses an insulin pump. (Tr. 504) Lance underwent surgery to treat the plantar fibromatoses in both feet in 2008. (Tr. 351, 374) After the surgery, Lance reported continued pain and discomfort in both feet, but the pain was better than before the surgery. (Tr. 351, 422) On April 8, 2009 Lance reported a new and very painful plantar fibroma distal to where the old one had been excised and a little bit of tingling in the lateral aspect of his left foot. (Tr. 422)

On September 11, 2012, Paramjeet Gill, M.D. completed an orthopedic consultation requested by Susan Dominic, M.D., Lance's primary physician. (Tr. 439) Dr. Gill noted Lance complained of occasional, moderate pain in his right hip that he had experienced for about six months, and a little bit of pain in his left hip. (*Id.*) Lance described the pain as sharp, stabbing, and shooting in nature. (*Id.*) Lance reported he was able to cook, don and doff shoes and socks, drive, get into and out of a bathtub, and walk "household distances." (*Id.*) Lance reported he had difficulty ascending and descending stairs, completing community errands, getting in or out of a vehicle, sleeping on his affected side, squatting, kneeling, standing from a seated position and walking "community distances." (*Id.*) Dr. Gill found Lance's gait was "relatively normal" and he had a "full supple range of motion of both hips in all planes, except for internal rotation where he had limitations bilaterally at approximately zero degrees." (Tr. 440) Dr. Gill found no evidence of impingement on either side. (*Id.*) X-rays indicated early arthritic changes, ossification of the labrum, and an osteophytic bump developing at the femoral head/neck junction. (*Id.*) There was also some evidence of erosion of the cartilage in the joint space, particularly posteriorly. (*Id.*) An MRI of Lance's right hip also indicated some possible labral

tearing, but that the labral morphology appeared preserved. (Tr. 440, 454) Dr. Gill diagnosed the development of a degenerative labral tear and chondral loss in Lance's right hip. (*Id.*) Dr. Gill recommended Lance modify his activities, use anti-inflammatories, and use potential intra-articular corticosteroid injections. (*Id.*)

On January 14, 2013, Christian N. Anderson, M.D. and Marc R. Safran, M.D. evaluated Lance's hip at the Stanford hospital. (Tr. 447) Lance complained of ongoing right hip pain "for six months" that came about gradually and progressively worsened. (*Id.*) Lance reported sharp pain with both adduction and abduction of his hip. (*Id.*) Lance reported the pain was worse when standing from a sitting position, and that it made it "difficult" for him to play with his two-year-old child. (*Id.*) The doctors found the range of motion on Lance's right side was 95 degrees of flexion, 5 degrees of internal rotation, and 15 degrees of external rotation. (*Id.*) The doctors assessed Dupuytren's and plantar fibromas, hip pain with significant loss of motion, but virtually no osteoarthritis based on the x-ray. (Tr. 448) They also found mixed femoral acetabular impingement. (*Id.*) The doctors diagnosed potential frozen hip or bursitis. (*Id.*) The doctors recommended physical therapy and exercise. (*Id.*) Lance was also talking Norco, which seemed to help with his pain and sleep. (Tr. 473)

In May, 2013, Lance's glycemic control was significantly improving. (Tr. 516) In July, 2014, endocrinologist Paul Norwood, M.D., found Lance's control of his diabetes was very good, but that his diabetic neuropathy had been worsening. (Tr. 539) In October of 2014, Victoria Walton, M.D. performed electrodiagnostic testing on Lance and found significant generalized peripheral neuropathy. (Tr. 526) Examinations of Lance's feet indicated decreased touch sensation and vibration. (Tr. 539, 542, 546)

Dr. Dominic, Lance's treating physician, evaluated him many times between 2012 and 2015. Her notes document that Lance repeatedly complained regarding his pain levels. (Tr. 553, 557, 558, 560, 566, 569, 570) On March 2, 2015, Lance filled out a pain questionnaire for Dr. Dominic. (Tr. 554; *see also* Tr. 563) He indicated he experienced frequent to constant pain in his feet, ankles, and hips that he described as aching, throbbing, shooting, stabbing, sharp, burning, exhausting, and numb. (*Id.*) He stated that medications and being off of his feet made his pain better. (*Id.*) On November 28, 2012, Dr. Dominic discussed with Lance what sort of jobs he could do and she determined the job must be sedentary because of Lance's foot and hip pain. (Tr. 561) Nothing in Dr. Dominic's notes indicate she ever mentioned or prescribed the use of a cane or other assistive walking device.

### C.     Opinion Evidence

#### 1.     Roger Wagner, M.D. – Consultative Examiner

On April 10, 2013, Roger Wagner, M.D. performed an internal medicine evaluation of Lance regarding his complaints of Type 2 diabetes mellitus, right hip labral tear, and bilateral foot plant fibromatosis. (Tr. 504) Dr. Wagner noted that Lance cooked, cleaned, shopped, and performed his own activities of daily living without assistance. (Tr. 505) He noted Lance did a bit of walking and cared for his three-year-old child for exercise. (*Id.*) He found Lance was easily able to get up out of his chair in the waiting room and to walk at a brisk pace to the examination room without assistance. (*Id.*) Dr. Wagner noted Lance sat comfortably and could easily get on and off the examination table. (*Id.*) Dr. Wagner noted Lance was very slow to bend over at the waist and could take off his shoes and socks, while demonstrating good dexterity and flexibility. (*Id.*) Lance was easily able to walk on toes and heels and his gait was normal. (Tr. 506) Dr. Wagner found Lance's left foot was mildly tender and there was minimal

tenderness on his right foot. (Tr. 507) Lance had some minor discomfort over the greater trochanter on the right and external rotation and some groin pain with internal rotation of the right hip. (*Id.*) In his diagnoses, Dr. Wagner noted that Lance had some discomfort in walking long distances, but did not have particular difficulty climbing stairs. (*Id.*) Dr. Wagner noted Lance had some tenderness in his left foot, but found no real residual thickening of the tendons. (*Id.*)

Based on the exam findings, Dr. Wagner found Lance could walk and stand for a maximum of up to six hours and could sit without limitation, with normal breaks. (Tr. 508) Dr. Wagner found no assistive device was necessary. (*Id.*) He determined Lance's maximum lifting and carrying capacity was fifty pounds occasionally and twenty-five pounds frequently. (*Id.*) Dr. Wagner found Lance could climb no more than frequently, there were no limitations on Lance's capacity for manipulative activities, and no workplace environmental limitations. (*Id.*)

## 2.     Susan Dominic M.D., ABIM – Treating Physician

Treating physician Susan Dominic, M.D., ABIM prepared a medical source statement of Lance's ability to do work-related physical activities on April 2, 2015. (Tr. 530-35) Dr. Dominic found Lance could both only occasionally lift and carry up to ten pounds and up to twenty pounds and never lift or carry twenty-one or more pounds. (Tr. 530) Dr. Dominic based these findings on Lance's right hip labral tear, severe diabetic painful peripheral neuropathy, and his plantar fascial fibromatosis, which cause Lance severe pain while standing or walking. (*Id.*)

Dr. Dominic found Lance could sit for two hours without interruption, and that he would need to stand to relieve hip pain from prolonged flexion while sitting. (Tr. 531) She found Lance could stand for thirty minutes and walk for fifteen to thirty minutes without interruption, because he was limited by the painful peripheral neuropathy and the plantar fascial fibromatosis

in his feet.  (*Id.*)  Dr. Dominic found Lance could sit for eight hours, stand for one hour, and walk for thirty to forty-five minutes in an eight-hour workday.  (*Id.*)  Dr. Dominic opined Lance "sometimes" required the use of a cane to ambulate, that he could use his free hand to carry light and small objects, and that he could only ambulate about 60 ft. without the use of a cane.  (*Id.*)  She indicated Lance's use of a cane was medically necessary, due to his antalgic gait caused by the pain from the labral tear in his right hip and diabetic peripheral neuropathy and plantar fascial fibromatosis in his feet.  (*Id.*)

Dr. Dominic opined Lance could frequently perform reaching, handling, fingering, and feeling, but could not occasionally push or pull with his hands.  (Tr. 532)  Although Dr. Dominic found minimal restrictions in Lance's ability to use and manipulate his upper extremities, she opined that his ability to push and pull were limited by the weight of the object and the extent to which Lance would have to use his right hip.  (*Id.*)

Dr. Dominic opined Lance could never operate foot controls with either foot but could occasionally climb stairs and ramps, stoop, and kneel.  He could never climb ladders or scaffolds, balance, crouch, or crawl.  (Tr. 533)  Dr. Dominic opined Lance could occasionally operate a motor vehicle or be exposed to humidity and wetness, but could never be exposed to unprotected heights, moving mechanical parts, dust, odors, fumes, or pulmonary irritants, extreme cold, extreme heat, or vibrations.  (Tr. 534)

Dr. Dominic opined Lance could shop, travel without a companion for assistance, ambulate to a limited degree without using a wheelchair, walker, two canes, or two crutches, walk a block at a very slow pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed himself, care for his personal hygiene, and sort, handle, and use papers and files.  (Tr.

535)  Dr. Dominic also opined that the medications Lance was taking caused sedation and limited his mental acuity.  (*Id.*)

### 3. State Agency Reviewing Physicians – Jonathan Norcross, M.D. and A. Nasrabadi, M.D.

On April 25, 2013, state agency reviewing physician Jonathan Norcross, M.D. assessed Lance's physical residual function capacity.  (Tr. 90)  Dr. Norcross opined Lance could occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds.  (Tr. 91)  He opined Lance could sit and stand and/or walk about six hours in an eight-hour workday.  (Tr. 91)  He opined Lance's abilities to push and pull were unlimited other than the limitations on his ability to lift and carry.  (*Id.*)  Dr. Norcross found Lance had no postural, manipulative, visual, communicative, or environmental limitations.  (*Id.*)  He noted that while Lance's "MDI's can reasonably be expected to produce the alleged pain and symptoms," "the objective medical evidence alone does not reasonably substantiate [Lance's] allegations about the intensity, persistence and functionally limiting effects of the symptoms."  (*Id.*)

On November 20, 2013, state agency reviewing physician A. Nasrabadi, M.D. reached the same conclusions as Dr. Norcross regarding Lance's physical residual function capacity.  (Tr. 104)

### 4. Prior State Agency Physical Consultants – Eli Perencevich, D.O. and W. Jerry McCloud M.D.

On March 3, 2008, a previous state agency physical consultant, Eli Perencevich, D. O., indicated, in relevant part, that Lance could lift and carry twenty pounds occasionally and ten pounds frequently.  (Tr. 359)  On July 16, 2009, another state agency physical consultant, W. Jerry McCloud, M.D. affirmed this assessment.  (Tr. 437)

### D. Testimonial Evidence

#### 1. Claimant's Testimony

At the May 6, 2015 hearing, Lance testified that he drove his children to school at least once a day. (Tr. 41) Lance stated he graduated high school, joined the Air Force, went to technical school, and completed a small amount of college coursework, but did not obtain a college degree. (*Id.*)

Lance stated he worked in a call center in 2009 and 2010 where he was primarily seated and never had to lift anything greater than 10 pounds. (Tr. 42)

Lance did bin filling, quality control-type work from 2006 to 2009. (*Id.*) He stated he became injured when briskly walking between five to fifteen miles in steel-toed shoes in that position. (*Id.*) Lance primarily stood and walked and lifted up to 30 pounds at that job. (*Id.*)

From 2001 to 2004, Lance worked for a freight forwarding company, in positions ranging from ocean imports to transportation manager, working primarily seated and lifting up to ten pounds. (Tr. 43-44)

Lance testified that he was unable to work because whenever he exerted himself, he experienced foot pain that shot through his legs and toward his back. (Tr. 47) He indicated the pain had progressively worsened over time and that it affected him whether seated or standing. (*Id.*) He stated that, when he sat for over an hour, there would be swelling that would cause pain that would distract him and force him to stand, but when he stood for too long, he would experience even worse pain. (Tr. 47-48)

Lance stated that in 2006, he had growths removed from his feet. (Tr. 48) He stated the growths had returned in the same areas of his feet, but they were smaller and more painful than the previous growths. (*Id.*) Lance stated the growths were so painful that his pain medication no

longer provided him with much relief and caused him to become very sleepy on a daily basis. (Tr. 49, 58)  Lance stated his current doctor had not suggested surgery to remove the new growths on his feet.  (*Id.*)  He testified the pain in his feet on an average day was an eight out of ten without medication and a seven out of ten with medication.  (Tr. 54)

Lance stated he had used an insulin pump for two years to effectively control his blood sugar levels and diabetes.  (Tr. 50)  Lance stated that, unless he was using effective pain medications, he would experience constant, tingling, shooting pains whenever he engaged in physical activity, like going to and from the grocery store with his family.  (Tr. 50-51)  Lance stated there had been a lot of nerve damage.  (Tr. 50)  Lance stated he had experienced tingling and numbness in his feet, with the pain being worse in his left foot, and shooting pain in his feet, hips, legs, and back.  (Tr. 51-52)

Lance stated he was unsure what caused the tearing in his right hip.  (Tr. 52)  One doctor had recommended hip surgery, but no surgery had been performed.  (Tr. 53)  Lance stated he was treating his right hip with physical therapy exercises and the medications doctors had prescribed for his feet.  (*Id.*)  Lance stated he was taking Lyrica, OxyContin, and hydrocodone, which would provide him with about twenty minutes of relief, but would also make him drowsy and impair his ability to concentrate.  (Tr. 53, 66)  Lance testified that he had also unsuccessfully tried nerve blocks, radiofrequency ablations, a chiropractor, and other medications to treat his pain.  (Tr. 55)

Lance stated that Dr. Dominic, his primary care physician, had treated him every one to three months for almost three years.  (Tr. 56-58)

Lance stated that on a typical day he would assist his wife with everything, including bathing, dressing, eating, and changing colostomy bags.  (Tr. 58)  He would also clean their

apartment, shop, and take his children to and from school and activities. (*Id.*) Lance stated that, if he were not the primary caregiver for his family, he would not be able to perform any job for eight hours a day because his ankles, hips, and feet would swell if he sat for long periods and his pain would affect his performance and attitude. (Tr. 59-61) Lance stated he could sit for an hour before the pain would force him to stand and that he could stand for 20 minutes without interruption. (Tr. 62) He stated he could probably walk a city block and could lift under forty pounds. (*Id.*) Lance testified he did not use a cane to ambulate. (Tr. 67)

### 2. Vocational Expert Testimony

Vocational expert Mr. Daschelet also testified at the May 6, 2015 hearing. (Tr. 69) In relevant part, the ALJ asked the VE what jobs an individual who was able or unable to perform the following limitations could do: lift and/or carry twenty pounds occasionally and ten pounds frequently; sit for two hours at one time, stand for thirty minutes at a time, and walk for thirty to forty-five minutes per eight-hour workday; sit for eight hours per eight-hour workday, as long as the individual could stand for two minutes after every 30 minutes period of sitting while remaining on task at the workstation; never operate foot controls with the bilateral lower extremities; never climb ladders or scaffolds, balance, crouch, crawl; occasionally climb stairs and ramps, stoop, and kneel; never be exposed to unprotected heights, moving mechanical parts, temperature extremes, or vibrations; only occasionally operate a motor vehicle; and occasionally be exposed to humidity and wetness. (Tr. 72-73) The VE opined that an individual with the limitations described in the ALJ's hypothetical could work in a sales manager position. (Tr. 73)

The ALJ then modified the hypothetical so that the individual could lift up to twenty pounds occasionally, but was unable to lift any amount of weight frequently with all of the other

same limitations.  (Tr. 74)  The VE testified that the hypothetical individual would not be able to perform any available work.  (*Id.*)

The ALJ then asked whether there was any available work that a hypothetical individual with all of the same limitations, but who could lift twenty pounds occasionally and ten pounds frequently and who would be limited to working with objects larger than palm-sized could perform.  (*Id.*)  The VE stated there would be no available work.  (Tr. 75)

## IV.  Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[1]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow the five-step sequential analysis set out in agency regulations, which can be paraphrased as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

---

[1] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423 (d)(2)(A).

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this

sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner

at Step Five to establish whether the claimant has the RFC and vocational factors to perform

work available in the national economy. *Id.*

## V.      The ALJ's Decision

The ALJ's August 12, 2015 decision contained the following paraphrased findings:

1. Lance last met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 17);

2. Lance had not engaged in substantial gainful activity since July 30, 2010, the alleged onset date (20 CFR 404.1571 et seq.). (Tr. 17);

3. Lance had the following severe impairments: diabetes mellitus with peripheral neuropathy, right hip labral tear, and plantar fibromatosis of the bilateral feet (20 CFR 404.1520(c)). (Tr. 17);

4. Lance did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 18);

5. After careful consideration of the entire record, the ALJ found that Lance

had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). Specifically, he could lift and/or carry twenty pounds occasionally and ten pounds frequently, and could sit for two hours at one time, stand for thirty minutes at one time, and walk for fifteen to thirty minutes at one time. Lance could stand for one hour per eight-hour workday, walk for thirty to forty-five minutes per eight-hour workday, and sit for eight hours per eight-hour workday, as long as he could stand for two minutes after every thirty-minute period of sitting while remaining on task at the workstation. The claimant could never operate foot controls with the bilateral lower extremities, and could never climb ladders or scaffolds, balance, crouch, or crawl, but could occasionally climb stairs and ramps, stoop, or kneel. He could never be exposed to unprotected heights, moving mechanical parts, extreme cold/heat, or vibrations; he could only occasionally operate a motor vehicle; and he could occasionally be exposed to humidity and wetness. As a result of medication side effects and fatigue, the claimant is further limited to performing simple, repetitive tasks commensurate with unskilled work. (Tr. 27);

6. Lance was unable to perform any past relevant work (20 CFR 404.1565). (Tr. 22);

7. Lance was born on November 28, 1972 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). (Tr. 23);

8. The claimant had at least a high school education and was able to communicate in English (20 CFR 404.1564) (Tr. 23);

9. Transferability of job skills is not material to the determination of disability because using the Medical- Vocational Rules as a framework supports a finding that the claimant was "not disabled", whether or not Lance had transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2) (Tr. 23);

10. Considering Lance's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the Lance could perform (20 CFR 404.1569 and 404.1569(a)). (Tr. 23);

11. Lance had not been under a disability, as defined in the Social Security Act, from July 30, 2010, through the date of the decision (20 CFR 404.1520(g)). (Tr.24)

Based on these findings, the ALJ determined that Lance was not disabled through August

12, 2015, the date of the ALJ's decision. (Tr. 24)

**VI.    Law & Analysis**

**A.    Standard of Review**

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999); *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the court must determine whether proper legal standards were applied.  If not, reversal is required, unless the error of law was harmless.  *See, e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error

prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

**B.     The ALJ Erred in Part in Evaluating Dr. Dominic's Medical Source Statement**

Lance argues the ALJ erred in evaluating Dr. Dominic's opinion by "arbitrarily crediting certain limitations and discrediting or disregarding others." ECF Doc. 14, Page ID# 704. Lance asserts that the ALJ's "internally inconsistent evaluation of Dr. Dominic's findings . . . preclude[s] any sort of meaningful judicial review." *Id.* The Commissioner counters that substantial evidence supports the ALJ's decision to give Dr. Dominic's opinion partial weight. ECF Doc. 15, Page ID# 729. The Commissioner argues that the ALJ correctly found that Dr. Dominic's opinions regarding the manipulative limitations and cane recommendation were overly restrictive and not consistent with the record evidence. *Id.*

1.      **The ALJ Correctly Analyzed Dr. Dominic's Opinions**
        **Regarding Lance's Manipulative Limitations and Need**
        **for a Cane**

Evidence from doctors who treat Social Security applicants must be weighed using

specific requirements created by the federal government. *Cole v. Astrue*, 661 F.3d 931, 937 (6th

Cir. 2011). The ALJ must examine what work the treating source performed. *Gayheart v.*

*Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013). The treating physician rule requires that

"[a]n ALJ [] give the opinion of a treating source controlling weight if he finds the opinion well-

supported by medically acceptable clinical and laboratory diagnostic techniques and not

inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation

marks omitted).

If an ALJ does not give the treating source opinion controlling weight, the ALJ must use

several factors to determine the weight to give the opinion, including: the length, frequency,

nature, and extent of the treatment relationship; supportability; consistency; specialization; and

other factors which support or contradict the opinion. 20 C.F.R. § 416.927(c). The ALJ is not

required to explain how he considered each of these factors but must provide "good reasons" for

discounting a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); *see also Cole*, 661 F.3d at

938 ("In addition to balancing the factors to determine what weight to give a treating source

opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons

for the weight actually assigned."). The ALJ's "good reasons" must be "supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996

SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). As the Sixth

Circuit has noted,

> The conflicting substantial evidence must consist of more than the medical
> opinions of the nontreating and nonexamining doctors. Otherwise the treating-
> physician rule would have no practical force because the treating source's opinion
> would have controlling weight only when the other sources agreed with that
> opinion. Such a rule would turn on its head the regulation's presumption of
> giving greater weight to treating sources because the weight of such sources
> would hinge on their consistency with nontreating, nonexamining sources.

*Id.* at 377. Because the reason-giving requirement exists to "ensur[e] that each denied claimant

receives fair process," the Sixth Circuit has held that an ALJ's "failure to follow the procedural

requirement of identifying the reasons for discounting the opinions and for explaining precisely

how those reasons affected the weight" given "*denotes a lack of substantial evidence*, even

where the conclusion of the ALJ may be justified based upon the record." *Id.* (quoting *Rogers v.

Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir.2007) (emphasis added)). However, the ALJ is

not obligated to provide an "exhaustive factor-by-factor analysis." *See Francis v. Comm'r of

Soc. Sec.* 414 F. App'x 802, 804 (6th Cir. 2011).

> Here, the ALJ accorded partial weight to Dr. Dominic's treating source opinion, stating:

> I give Dr. Dominic's assessment partial weight and agree that the claimant's work
> activity should be limited to a limited range of light work activity. Dr. Dominic is
> a treating physician that examined the claimant on multiple occasions throughout
> a period of three years leading up to the hearing, which gives her a greater
> longitudinal perspective on the claimant's conditions. However, I find Dr.
> Dominic's manipulative limitations and recommendation of a cane to be overly
> restrictive and unsupported by the medical evidence of record. The claimant's
> physical examinations of his hands and arms were generally normal.
> Furthermore, although the claimant has an antalgic gait, he was able to ambulate
> without the use of an assistive device (Exhibits 12(f), p. 26; 18F and hearing
> testimony). Accordingly, I give partial weight to Dr. Dominic's opinion.

(Tr. 21)

18

As discussed above, Dr. Dominic prepared a medical source statement regarding Lance's physical capacity on April 2, 2015. (Tr. 530-35) Dr. Dominic's medical source statement indicated, among other things, that Lance could lift and carry up to 11 to 20 lbs. *and* up to 10 lbs. only occasionally. (Tr. 530) Dr. Dominic also opined that it was medically necessary for Lance to have a cane and that he could only ambulate about 60 feet without the use of a cane. (Tr. 531) (Tr. 530) Dr. Dominic based these findings on Lance's right hip labral tear that caused Lance to walk with an antalgic gait, severe diabetic painful peripheral neuropathy, and his plantar fascial fibromatosis, which cause Lance severe pain while standing or walking. (*Id.*)

Lance complains that Dr. Dominic's medical opinions "were fully explained in her medical source statement." ECF Doc. 14, Page ID# 707. Lance also argues that the medical record supports his need to use a cane because: Lance had multiple surgeries on his feet in regard to his plantar fibromatosis; medical imaging showed early arthritic changes in his right hip; Dr. Anderson noted Lance suffered from hip pain with significant loss of motion with mixed femoral acetabular impingement; Lance consistently complained about severe hip and foot pain; and Dr. Wagner noted Lance suffered from right hip pain and had problems walking longs distances. *Id.* at 707-08. Lance cites no specific evidence in the record supporting Dr. Dominic's opinion regarding his manipulative limitations.

The ALJ stated that she assigned partial weight to Dr. Dominic's manipulative limitations and recommendation of a cane because these limitations were "overly restrictive and unsupported by the medical evidence of record." (Tr. 21); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."). The ALJ also stated that she found Lance's allegations to be only "partially credible" because:

> [H]is complaints of disabling symptoms and limitations are inconsistent with his
> described daily activities, which include serving full-time as the sole disability
> caregiver of his wife suffering from Stage IV cancer.

(Tr. 22)  The ALJ also stated Lance's "reports of disabling symptoms are further undermined by

the diagnostic and other objective medical evidence, which failed to show a physiological basis

for the levels of limitation alleged." (*Id.*)  The ALJ noted that there "has been no surgery on

[Lance's] right hip, and he testified that he does not use an assistive device to ambulate." (*Id.*)

Thus, the ALJ based her weighing of Dr. Dominic's opinions on the practical realities of

Lance's daily living and upon her conclusion that Lance's disability allegations were not as

severe as Lance alleged.  The ALJ also noted that the limitations in the residual function capacity

accommodated Lance's "consistently demonstrated decreased bilateral lower extremity sensation

and [] antalgic gait" and his continued reports of bilateral lower extremity pain.  (Tr. 22)

Generally, "[a]n ALJ's findings based on credibility of the applicant are to be accorded

great weight and deference, particularly since [the] ALJ is charged with the duty of observing a

witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th

Cir.2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997)).  An "ALJ

may reject medical opinions based on a claimant's self-reports [when] the reports themselves

lack credibility or [when] the claimant is not credible." *Wyatt v. Colvin*, No. 12-CV-289, 2013

WL 4080718, at *4 (S.D. Ohio Aug. 13, 2013).  Further, "[t]he mere diagnosis of a condition

does not speak to its severity or indicate the functional limitations caused by the ailment. *See*

*Taylor v. Comm'r of Soc. Sec. Admin.*, No. 14CV686, 2015 WL 4730716, at *3 (N.D. Ohio Aug.

10, 2015) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir.1990)).

The court must defer to the ALJ's credibility determination, and that determination, in turn,

provided substantial evidence for her decision to discount the opinion of Dr. Dominic.

Substantial evidence also supports the ALJ's conclusion that Lance's daily activities were inconsistent with his claimed disabilities. "Daily activities are one factor than an ALJ may consider in evaluating 'the intensity and persistence of [a claimant's] symptoms . . . and determining the extent to which [these] symptoms limit [the claimant's] capacity for work." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 120 (6th Cir. 2016) (quoting 20 C.F.R. § 404.1529(c)(3)(i)); 416.929(c)(3)(i)). The ALJ noted that Lance served full-time as the sole disability caregiver for his wife, a cancer patient. (Tr. 22). The ALJ noted that Lance prepared food for, fed, dressed, and bathed his wife and changed her colostomy bag. (*Id.*) The ALJ further noted Lance "also cleans his family's apartment and serves as the primary caregiver for his children, whom he transports to and from school daily." (*Id.*)

The ALJ's discussion of Lance's medical record also supports the ALJ's decision to give limited weight to Dr. Dominic's medical source statement. *C.f. Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 731 (N.D. Ohio 2005) (finding that the ALJ's extensive discussion of the plaintiff's treating history provided substantial evidence to support the ALJ's decision to give little probative weight to a physician's RFC assessment, even though the ALJ failed to perform a formal analysis of the opinion under § 404.1527(d)). For example, with regard to the manipulative limitations, the ALJ noted the physical examinations of Lance's hands and arms were generally normal. (Tr. 21 (citing Tr. 539, 542, 546)) Moreover, in her medical source statement, Dr. Dominic stated, "[a]t this time there are minimal restrictions to [Lance's] ability to use and manipulate his upper extremities" but that his "diabetic peripheral neuropathy [would] likely progress to involve his hands." (Tr. 532)

With respect to Dr. Dominic's opinion that a cane was medically necessary, The ALJ noted that although there were findings that Lance had an antalgic gait, he was able to ambulate

without the use of an assistive device. (Tr. 21 (citing Tr. 478, 67)) The ALJ also cited to a portion of Lance's hearing testimony in which he contradicted Dr. Dominic's opinion regarding his need to use a cane. (*Id.*) When the ALJ asked if Lance had ever used a cane to ambulate or walk, Lance replied, "I have not used a cane." (Tr. 67) Also, Lance did not indicate he used a cane when he filled out a Form SSA 3373-BK Function Report on February 13, 2013. (Tr. 274) Moreover, as noted above, there is no indication that Dr. Dominic or any other physician ever prescribed a cane, despite her opinion that one was medically necessary.

The ALJ's decision to discount Dr. Dominic's opinions regarding Lance's manipulative limitations and use of a cane are supported by substantial evidence because of the inconsistency of these opinions with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(2). Although the ALJ did not find Dr. Dominic's opinion that Lance required the use of a cane credible, the ALJ noted that other limitations in the RFC accommodated Lance's "consistently demonstrated decreased bilateral lower extremity sensation and [] antalgic gait" and his continued reports of bilateral lower extremity pain. (Tr. 22) The ALJ's discussion of the reasons supporting her conclusion on this topic constituted good reasons to discount these portions of Dr. Dominic's opinion. In light of the foregoing analysis, there was no error in the ALJ's decision to discount Dr. Dominic's assessment of Lance's manipulative limitations and need to use a cane.

## 2. The ALJ Erred in Evaluating Dr. Dominic's Opinions Regarding Lance's Ability to Lift and Carry

Lance also challenges the ALJ's failure to incorporate Dr. Dominic's full lift and carry restrictions into her RFC determination. ECF Doc. 14, Page ID# 709; ECF Doc. 16, Page ID# 741. Lance argues that Dr. Dominic opined that Lance was limited to only occasionally lifting and carrying of up to ten pounds, but the ALJ neither included this limitation in her RFC determination nor "identified a single reason as to why it was omitted." ECF Doc. 16, Page ID#

741. Lance argues this omission was not harmless error because the VE testified that such a limitation would preclude Lance from performing all work. *Id.* Indeed, at the hearing the ALJ asked the VE whether an individual who could lift twenty pounds occasionally, but was not capable of lifting any amount of weight frequently, with several additional limitations, would be able to perform any jobs in the national economy and the vocational expert responded, "By definition, no." (Tr. 74) Lance argues that the ALJ "failed to explain why she was limiting [] Lance to frequent lifting and carrying of up to 10 pounds instead of adopting Dr. Dominic's opinions like she had done with the majority of her residual functional capacity." ECF Doc. 14, Page ID# 710. The court agrees.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7 (internal footnote omitted).

Here, the ALJ committed an error in her consideration of important record evidence, which deprives her RFC formulation and ultimate non-disability finding of substantial evidence. The ALJ accorded Dr. Dominic's opinion "partial weight," and appeared to heavily rely upon a misstatement of Dr. Dominic's opinion regarding Lance's ability to lift and/or carry weight. In her decision, the ALJ stated that Dr. Dominic "opined that [Lance] could lift and carry twenty pounds occasionally and *ten pounds frequently*." (Tr. 20) (Emphasis added.) But this is not what Dr. Dominic opined. Rather, Dr. Dominic opined that Lance could only lift and carry ten pounds *occasionally*. (Tr. 530) (Emphasis added.) The ALJ also stated she gave "Dr. Dominic's assessment partial weight and agree[d] that the [Lance's] work activity should be limited to a range of light work activity." (Tr. 26) However, pursuant to 20 C.F.R. § 404.1567(b), light work involves "frequent lifting or carrying of objects weighing up to 10 pounds," which Dr. Dominic stated Lance is unable to do. (Tr. 26)

The ALJ did not cite to sufficient alternative evidence that supported her RFC determination that Lance could lift and/or carry twenty pounds occasionally and ten pounds frequently. Drs. Wagner, Norcross, and Nasrabadi all opined that Lance's maximum lifting and carrying capacities were fifty pounds occasionally and twenty-five pounds frequently. (Tr. 91, 103-04, 508) The ALJ stated she gave Dr. Wagner's assessment "little weight" because it was inconsistent with Dr. Dominic's opinion and the medical evidence of record. (Tr. 26) The ALJ also gave state agency physical medical consultants Dr. Norcross's and Dr. Nasrabadi's opinions "little weight because they [we]re not restrictive enough for the reasons detailed in weighing Dr. Wagner's opinion." (Tr. 26)

The ALJ also discussed the opinions of previous state agency physical consultants, Dr. Perencevich and Dr. McCloud, who assessed Lance's physical capacity in March of 2008 and

July of 2009.  (Tr. 21)  Dr. Perencevich indicated, in relevant part, that Lance could lift and carry

twenty pounds occasionally and ten pounds frequently.  (*Id.*)  Dr. McCloud affirmed a prior RFC

assessment, and stated "[t]here [wa]s no new medical [evidence] since the prior decision that

would alter the 3/3/09 RFC."  (Tr. 437)

Drs. Perencevich's and McCloud's assessments regarding Lance's abilities to lift and

carry *are* consistent with the ALJ's RFC determination.  However, Dr. Perencevich's opinion is

of limited utility because he conducted his review of Lance's medical record on March 26, 2008,

before Lance had surgery to excise the planter fibromas in his feet and before Lance was

diagnosed with a torn hip labrum.  (Tr. 351)  The ALJ stated that she "g[a]ve these opinions

partial weight and agree[d] that the claimant is limited to a reduced range of light work activity."

(*Id.*)  The ALJ found these assessments were not restrictive enough because "additional postural

limitations, environmental limitations, and no use of foot controls are appropriate due to

significant peripheral neuropathy and fibromatosis of the bilateral feet."  (*Id.*)  Notably, although

the ALJ decided to give no weight to the 2008 opinions of Lance's former treating physician,

Tarek Elsawy, M.D., because "his assessments were provided prior to the relevant period," (Tr.

22) she failed to explain why she apparently decided to use the lift and carry conclusions of Dr.

Perencevich's 2008 opinion despite the fact that it too predated the relevant period.

The undersigned is unable to discern how this error in handling Dr. Dominic's lift and

carry opinions may have influenced the ALJ's physical RFC calculation or other aspects of her

opinion.  Given the VE's testimony, the ALJ's error in characterizing the record evidence and

analyzing Dr. Dominic's lift and carry opinions was not harmless and this matter must be

remanded for further consideration.  *See Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499-500

(6th Cir. 2014) (errors in the ALJ's characterization of evidence on which non-disability finding is based warrant remand).

### C. The ALJ Properly Evaluated Lance's Physical Condition under Listing 1.02 (A)

Lance argues the ALJ erred at Step Three of her sequential analysis when she neglected to adequately analyze whether Lance's conditions met or were functionally equivalent to the requirements of Listing 1.02, which concerns major dysfunction of a joint or joints due to any cause. ECF Doc. 14; Page ID# 711; *see* 20 C.F.R. Pt. 404, App'x 1, § 1.02. The Commissioner counters that the ALJ provided sufficient articulation about her Step Three findings to allow the court to review her evaluation of Listing 1.02, Lance failed to demonstrate the ALJ's analysis was lacking in any material way, and substantial evidence supports the ALJ's step three finding. ECF Doc. 15, Page ID# 724.

The Listing of impairments "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at Step Three. 20 C.F.R. § 404.1520; *see also Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir.1986). The claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir.1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests

with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir.1986). The court may look to the ALJ's decision in its entirety to justify the ALJ's Step Three analysis. *See Snoke v. Astrue*, 10-cv-1178, 2012 U.S. Dist. LEXIS 21930, 2012 WL 568986, at *6 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). It is not sufficient to come close to meeting the conditions of a Listing. *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir.1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his decision. *See Reynolds*, 2011 WL 1228165 at * 4–5; *Marok v. Astrue*, 5:08CV1832, 2010 WL 2294056 at *3 (N.D. Ohio Jun.3, 2010); *Waller v. Comm'r of Soc. Sec.*, 1:12–cv–00798, 2012 WL 6771844 at * 3 (N.D. Ohio Dec.7, 2012) *adopted by Waller v. Comm'r of Soc. Sec.*, No. 1:12-CV-0798, 2013 WL 57046 (N.D. Ohio Jan. 3, 2013); *Keyes v. Astrue*, 1:11-cv-00312, 2012 WL 832576 at * 5–6 (N.D. Ohio March 12, 2012).

Listing § 1.02A provides for a finding of disability when a claimant suffers from major dysfunction of a joint due to any cause

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability, and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s) with
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.01(A). The Regulations define an inability to ambulate effectively as an:

> Extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having

insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.).

To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpt. P, App. 1, § 100(B)(2)(b)(1) and (2).

Here, the ALJ's analysis regarding Listing 1.02 was as follows:

The impairments listed in Appendix 1, Subpart P, 20 CFR Part 404 which are most nearly applicable to the claimant's medically determinable impairments, particularly Sections 1.02 for dysfunction of a major joint, 9.00 for endocrine disorders, and 11.14 for peripheral neuropathy, have been reviewed but are not met or medically equaled under the facts of this case.

(Tr. 18)

Lance does not argue that his impairments cause an inability to perform fine and gross movements effectively, within the meaning of Listings, so it is unnecessary to address Listing 1.02(B). Rather, Lance focuses on Listing 1.02(A). In Lance's attorney's opening statement he stated that the legal theory supporting Lance's disability claim was his meeting or equaling listing 1.02(A) due to his bilateral hip osteoarthritis, right labral tear, and his bilateral plantar fibromatosis. ECF Doc. 13, Page ID# 97. Lance argues that medical imaging showed that Lance suffered from a right hip labral tear, x-rays indicated some early arthritic changes at the femoral head/neck junction, and "treatment notes documented his consistent complaints of severe pain of

28

the right hip." ECF Doc. 14, Page ID# 713.

Lance argues that his impairments meet or medically equal the requirements of Listing 1.02(A). *Id.* He contends that although Dr. Dominic indicated Lance retained the ability to perform all of the activities listed in Listing § 1.00(B)(2)(b)(2), she also indicated Lance "was very limited in his ability to ambulate without a wheelchair, walker or two canes; and that when walking a block at a reasonable pace on rough or uneven surfaces [] Lance was required to move very slowly and carefully as he is a high fall risk due to his peripheral neuropathy." *Id.*

The Commissioner counters that Lance's argument is without merit because the ALJ expressly addressed Listing 1.02 in her decision and found that Lance's impairments did not meet or equal the listing. ECF Doc. 15, Page ID# 725. The Commissioner also argued Lance failed to show the "inability to ambulate effectively" that is required to satisfy Listing 1.02(A). ECF Doc. 15, Page ID# 725.

In the ALJ's decision, she noted the imaging evidence of erosion of the cartilage in the joint space in Lance's right hip (Tr. 20, 440), evidence of an osteophytic bump developing at the femoral head/neck junction (Tr. 20, 440), and evidence of femoral acetabular impingement that reduced the range of motion in Lance's hip joint. (Tr. 20) The ALJ also noted that a MRI scan of Lance's right hip showed that although there was some fluid signal undermining and traversing the base of the acetabular labrum, the labral morphology appeared preserved. (Tr. 20, 454). The ALJ noted that Lance reported that Norco medication helped with his pain when taken early enough. (Tr. 20, 473) The ALJ also noted that Dr. Wagner found Lance exhibited relatively minor discomfort over the greater right trochanter/groin upon rotation. (Tr. 20, 507) The ALJ stated she found "Dr. Dominic's . . . recommendation of a cane to be overly restrictive and unsupported by the medical evidence of record." (Tr. 20) She noted that although Lance

displayed an antalgic gait, he was able to ambulate without using an assistive device.  (Tr. 20,

22)  During the hearing the ALJ asked Lance if he had ever used a cane to ambulate or walk, and

Lance testified that he had not used a cane.  (Tr. 67)  The ALJ also stated that she found Lance's

complaints of disabling symptoms and limitations inconsistent with his described daily activities,

because he; prepared food for, fed, dressed, and bathed his wife and changed her colostomy bag;

cleaned his family's apartment; and served as the primary caregiver for his children, whom he

transported to and from school daily.  (Tr. 22, 268-71)  Is it clear from this discussion the ALJ

adequately considered the elements of Listing 1.02.

Lance has also failed to meet his burden of showing that met or medically equaled

Listing 1.02A.  *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) ("To meet or equal a

listed impairment, the claimant must satisfy all the criteria of the listed impairment.  The

claimant bears the burden of proving his condition meets or equals a listed impairment.")

(internal citations omitted).  Specifically, Lance has failed to show he had an "inability to

ambulate effectively" as described in Listing § 1.00(2)(b)(2).

Lance points to no evidence indicating that he was unable to walk without the use of a

walker, two crutches, or two canes.  Lance testified that he had not used a cane.  (Tr. 67); *c.f.*

*Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *10 (N.D. Ohio Mar. 2, 2017)

(finding plaintiff was able to "ambulate effectively" because plaintiff testified he was able to

walk without a cane most of the time), *adopted by* No. 1:16 CV 1086, 2017 WL 1304485 (N.D.

Ohio Apr. 3, 2017).  Further, consultative examiner Dr. Wagner found that an assistive device

was "[n]ot necessary."  (Tr. 531)  Although Dr. Dominic indicated that it was medically

necessary for Lance to use a single cane, "[c]ourts have found that use of a single cane or crutch

does not establish that a claimant is unable to ambulate effectively for purposes of Listing 1.02.

*See Sutton v. Berryhill*, No. 1:17CV233, 2017 WL 6568183, at *14 (N.D. Ohio Dec. 8, 2017) (collecting cases), *adopted by Sutton v. Comm'r Soc. Sec.*, No. 1:17-CV-233, 2017 WL 6558165 (N.D. Ohio Dec. 22, 2017). Further, as noted above, a review of Dr. Dominic's treatment records contains no mention of the use of, need for, or prescription of a cane. Moreover, Lance's own completion of a Function Report did not indicate he used a cane. (Tr. 274)

Lance also argued that he met or medically equaled Listing 1.02(A) because Dr. Dominic indicated he was required to move very slowly and carefully when walking on rough or uneven surfaces due to his peripheral neuropathy." ECF Doc. 14, Page ID# 713, (citing Tr. 535). Lance is correct that Dr. Dominic stated he would need to move slowly and carefully, but she still opined that Lance was able to walk a block on rough or uneven surfaces at a pace that she indicated was "reasonable." (Tr. 535) Moreover, as the Commissioner points out, Dr. Dominic found Lance would need to move very slowly and carefully when walking on rough or uneven surfaces do to his *peripheral neuropathy*, and not due to gross anatomical deformity and chronic joint pain and stiffness in a peripheral weight-bearing joint.

Lance's primary objection is to the sufficiency of the ALJ's discussion of Listing 1.02. But, as noted above, the court must examine the entire ALJ decision in order to assess the adequacy of the consideration of whether a Listing has been met. Here, the ALJ's entire discussion reveals a robust, though partially erroneous consideration of the entire medical record. She concluded Lance had not demonstrated he met that Listing; he has not done so here either. Accordingly, Lance has not satisfied his burden of demonstrating the ALJ erred in finding he did not meet the requirements of Listing 1.02.

**VII.    Conclusion**

The court finds the Commissioner's RFC determination is not supported by substantial evidence because the Commissioner failed to properly consider treating source opinion evidence concerning Lance's ability to lift and carry.  However, the Commissioner's handling of the other medical opinion evidence of record and (iii) the Step Three analysis regarding Listing 1.02(A) were supported by substantial evidence.  The final decision of the Commissioner must be VACATED and the case must be REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Memorandum of Opinion and Order.

**IT IS SO ORDERED.**

Dated: April 27, 2018

Thomas M. Parker
United States Magistrate Judge